UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

GEORDAN ARTIS et al.,

        Plaintiffs,                      Case No. 1:17-cv-516

v.                                       Honorable Janet T. Neff

INGHAM COUNTY JAIL et al.,

        Defendants.

_____/

## OPINION

This is a civil rights action brought by several county jail inmates under 42 U.S.C. § 1983. Initially, there were eight Plaintiffs. Only three remain: Paul Jackson, Leonard Samuel Barlow, and James Dalton. The Court has granted Plaintiffs leave to file an amended complaint. This matter is before the Court for screening of Plaintiffs' amended complaint under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA).

The PLRA requires the Court to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiffs' action will be dismissed in part, for failure to state a claim, and served in part.

## Factual Allegations

Plaintiffs Jackson, Dalton and Barlow are incarcerated at the Ingham County Jail (ICJ). They sue the ICJ; Ingham County Sheriff Scott Wriggelsworth;[1] and Ingham County Sheriff's Deputies Soltis and Perry. Plaintiffs complain generally about the conditions of their confinement.[2]

Plaintiffs allege:

1.  Two persons are housed in cells intended for one person. (Am. Compl. ¶ 3.)

2.  Inmates are locked in their cells for eighteen hours a day and are permitted out for only two 3-hour periods in a small television room. They are not permitted to go to the gym or outside for exercise. They are not permitted to exercise in the television room. It is not possible to exercise in the cells. (*Id.* ¶¶ 2-3.)

3.  Plaintiffs are housed with convicted felons who are "stabbing us, threatening us, raping us, taking, stealing and forcefully taking our anal virginity, our food, and commissary food items, cosmetics, and anything else we have that they want." (*Id.* ¶ 2.)

4.  Black mold is in several jail posts that have been closed. The black mold has become airborne, travels through the ventilation system, and jeopardizes the health and safety of the Plaintiffs. (*Id.* ¶ 4.)

5.  The water is unsafe to drink. (*Id.* ¶ 5.)

6.  The toilets are timed to flush twice an hour. After the two flushes, inmates are forced to defecate or urinate in a dirty toilet which is unsanitary and odorous. (*Id.* ¶ 6.)

7.  The shower only stays on for three minutes (*Id.* ¶ 7.)

---

[1]Plaintiffs identify the Ingham County Sheriff as Scott Wigglesworth. According to the Sheriff's Department website, however, the proper spelling is Wriggelsworth. http://sh.ingham.org/

[2]This is not Plaintiff Jackson's first attempt to raise the same "conditions of confinement" claims in this Court. *See Jackson et al. v. Ingham County Jail et al.*, No. 1:17-cv-237 (W.D. Mich.) (Jackson's claims were dismissed for failure to pay the filing fee; the claims were dismissed on the merits with regard to Jackson's co-plaintiff Keith Medlin) (Op. and J., ECF Nos. 19, 20); *Jackson v. Ingham County Jail et al.*, 1:17-cv-463 (W.D. Mich.) (Jackson's claims were dismissed for failure to pay the filing fee) (Ord. and J., ECF Nos. 6, 7). The identical claims are also raised in *Klotz et al. v. Ingham County Jail*, 1:17-cv-608 (W.D. Mich.). Plaintiff Jackson is not a party in that suit. Nonetheless, a comparison of the pleadings filed in each suit suggests that Plaintiff Jackson drafted the pleadings in *Klotz* as well.

Plaintiffs also raise claims that implicate First Amendment protections:

8. The computer that functions as the jail law library has been eliminated. (*Id*. ¶ 8.)

9. The only non-legal mail items Plaintiffs are permitted to receive are postcards. (*Id*. ¶ 9.)

10. Plaintiffs are not permitted to possess legal materials, including photographs obtained in discovery in pending civil and criminal actions. (*Id*. ¶ 9.)

 The remaining allegations in the complaint relate only to Plaintiff Jackson. Plaintiff Jackson makes several allegations against Defendants Soltis and Perry regarding an incident at the Ingham County Circuit Court on March 24, 2017. On that date, Plaintiff Jackson alleges that Defendant Soltis "proceeded to handling [Plaintiff] very roughly[,]" used a racial slur, and intentionally dropped Plaintiff's food on the floor. (*Id*. ¶ 10.) Later, Defendant Perry yelled at Plaintiff, called him derogatory names, threatened him, and demanded that he pick up the food from the floor. (*Id*.) Plaintiff also believes that Defendant Perry has used sex with Plaintiff's appointed counsel to cause counsel to render ineffective assistance to Plaintiff. (*Id*. ¶ 11.)

 Plaintiffs seek punitive damages in the amount of $250,000.00 from Defendant Wriggelsworth because he "is directly responsible concerning these hazardous, unconstitutional living conditions . . . ." (*Id*. ¶ 12.) Plaintiffs also request compensatory damages in the amount of $250,000.00. (*Id*. ¶ 15.) Finally, Plaintiffs also request damages against Defendant Soltis in the amount of $250,000.00 and damages against Defendant Perry in the amount of $150,000.00. (*Id.* ¶ 16.)

 Additionally, Plaintiffs request injunctive relief. They ask that the air and water in the jail be tested. (*Id*. ¶ 13.) They ask the Court to order video evidence of the March 24, 2017,

incident to be preserved. (*Id.* ¶ 10.) They ask the Court to order the return of confiscated mail items and to compel the jail to permit personal mail other than postcards. (*Id.* ¶ 9.) They also ask the Court to order the jail to remedy the lack of a law library. (*Id.* ¶ 8.)

## Discussion

### I.    Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 CHARLES ALLEN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE CIVIL § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778

(E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrs.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. December 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding *in forma pauperis*, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes"

provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that prisoners like Plaintiffs may not join in one complaint all of the defendants against whom they may have a claim, unless the prisoners satisfy the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Tuft v. Texas,* 397 F. App'x 59, 61 (5th Cir. 2010) ("In addition, 'the creative joinder of actions' by prisoner plaintiffs to avoid the strictures of the Prison Litigation Reform Act of 1995 . . . should be discouraged."); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) ("We doubt that Congress intended that § 1915(g) could be so facilely circumvented by the creative joinder of actions."); *Shephard v. Edwards*, No. C2–01–563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va.

2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

The claims of Plaintiffs are readily broken down into two distinct groups: (1) claims raised by all three Plaintiffs that the policies adopted by Defendant Sheriff Wriggelsworth on behalf of Ingham County[3] have resulted in conditions of confinement that violate the First Amendment and the Eighth Amendment; and (2) claims raised by Plaintiff Jackson that on March 24, 2017, at the Ingham County Circuit Court, Defendants Soltis and Perry violated Plaintiff Jackson's Eighth Amendment and, possibly, Fourteenth Amendment rights, and Defendant Perry has subsequently interfered with Plaintiff Jackson's access to the courts by causing Plaintiff Jackson's appointed counsel to render ineffective assistance. Certainly, the joinder of the three Plaintiffs to raise the joined First and Eighth amendment claims against joined Defendants Ingham County and Sheriff Wriggelsworth satisfies the requirements of Rules 18 and 20. Similarly, Plaintiff Jackson's various claims against Defendants Soltis and Perry are proximate in time, place, and participants to each other such that the claims against Defendant Soltis are properly joined to the claims against Defendant Perry. But, there is no commonality between the two groups of claims. The claims against Defendants Soltis and Perry do not arise out of the same transactions or occurrences as, and they do not share common questions of law and fact with, the claims against Ingham County and Sheriff Wriggelsworth.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined

---

[3]As set forth in § IIA, *infra*, the Court will substitute Ingham County as a defendant in place of the Ingham County Jail.

parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately.  *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("Parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just.").  "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'"  *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties."  *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV.*, 467 F.3d at 845.  Such gratuitous harm exists if the dismissal results in the party's loss of the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice.  *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

In this case, Plaintiffs bring their causes of action under 42 U.S.C. § 1983.  For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years.  *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending

which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003). Moreover, the statute of limitations is tolled for the period during which a plaintiff's available state remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000).

Based on Plaintiffs' allegations, it appears Plaintiff Jackson has more than two years before the statute of limitations would expire as to any of his claims against Defendants Soltis and Perry. Those claims are not at risk of being time-barred. Plaintiff Jackson therefore will not suffer gratuitous harm if the improperly joined Defendants are dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and dismiss, for misjoinder, Plaintiffs' claims against Defendants Soltis and Perry, without prejudice to the institution of new, separate lawsuits by Plaintiff Jackson against those Defendants. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("'In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs'"); *Carney*, 2008 WL 485204, at *3 (same).

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state

a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Plaintiffs contend that they are subjected to unhealthy and unsafe conditions of confinement in violation of the Eighth Amendment's prohibition of cruel and unusual punishment and that the absence of legal resources, the confiscation of legal discovery material, and the "postcard only" rule for incoming non-legal mail violate Plaintiffs' First Amendment rights.

A.      Liability of Ingham County and Sheriff Wriggelsworth

Plaintiffs sue the Ingham County Jail.  The jail is a building, not an entity capable of being sued in its own right.  The Court, therefore, will dismiss Defendant Ingham County Jail.

However, construing Plaintiffs' *pro se* complaint with all required liberality, *Haines*, 404 U.S. at 520, the Court assumes that Plaintiffs intended to sue Ingham County.  Ingham County may not be held vicariously liable for the actions of its employees under § 1983.  *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Instead, a county is liable only when its official policy or custom causes the injury. *Id.*

Here, Plaintiffs allege that the county had an official policy or custom of maintaining unconstitutional conditions at the ICJ, e.g., double bunking, cell confinement,  prohibiting exercise, failing to segregate dangerous prisoners, failing to address the black mold problem, putting up warning signs rather than fixing the unsafe water, limiting toilet flushes, time-limiting showers, eliminating the computer/law library, limiting incoming personal mail to postcards, and confiscating photographs even though they are legal documents.

In a municipal liability claim, the finding of a policy or custom is the initial determination to be made.  *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996).  The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy.  *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509.  It is the Court's task to identify the officials or governmental bodies which speak with final policymaking

authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784-85 (1997).

In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. MICH. COMP. LAWS § 51.75 (sheriff has the "charge and custody" of the jails in his county); MICH. COMP. LAWS § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); MICH. COMP. LAWS § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*"). Thus, the Court looks to the allegations in Plaintiffs' complaint to determine whether Plaintiffs have alleged that the sheriff has established a policy or custom which caused Plaintiffs to be deprived of a constitutional right.

To the extent that the alleged violations state a claim, Plaintiffs have sufficiently alleged that Ingham County is liable for those violations. The Court therefore directs the Clerk to substitute Ingham County as a Defendant in the place of Defendant Ingham County Jail.

Moreover, because Defendant Wriggelsworth is the author of the offending policies, he would be liable as well. Plaintiffs bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or vicarious liability. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 694). As the Sixth Circuit has repeatedly emphasized:

Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly

> authorized, approved or knowingly acquiesced in the unconstitutional conduct of the
> offending subordinate.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d

416, 421 (6th Cir. 1984)); *accord Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton

v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cty. Sheriff*, 891 F.2d

1241, 1246 (6th Cir. 1989). Liability under § 1983 must be based on active unconstitutional

behavior and cannot be based upon "a mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Even if

Defendant Wriggelsworth was not the individual enforcing the policy against Plaintiffs in a

particular instance, his role in drafting the policy is the sort of authorization, approval, or

acquiescence in the unconstitutional conduct that supports the imposition of liability.[4]

B.      Eighth Amendment–Conditions of Confinement

The Eighth Amendment imposes a constitutional limitation on the power of the states

to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene

society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and

wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting

*Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized

measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596,

600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential

---

[4]In that regard, Plaintiffs' conditions of confinement claims stand in stark contrast to Plaintiff Jackson's claims against Defendants Soltis and Perry. There are no allegations that Soltis and Perry acted pursuant to a policy or custom established by Defendant Wriggelsworth for Ingham County. Thus, there is no basis to impose liability on Wriggelsworth or Ingham County for the conduct of Soltis and Perry.

food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Although the Eighth Amendment's protections apply specifically to post-conviction inmates, *see Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir. 1992), the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well. *Thompson v. Cty. of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994); *see also Richko v. Wayne Cty.*, 819 F.3d 907 (6th Cir. 2016); *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (stating that alleged violation of pretrial detainee's Eighth and Fourteenth Amendment rights is governed by the "deliberate indifference" standard). Where any person acting under color of state law abridges rights secured by the Constitution or United States laws, including a detainee's Eighth and Fourteenth Amendment rights, § 1983 provides civil redress. 42 U.S.C. § 1983; *see, e.g.*, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989).

1.      double bunking

Plaintiffs' allegations about being double-bunked fail to state a claim. In *Rhodes v. Chapman*, 452 U.S. 337 (1981), the Supreme Court held that prison overcrowding, standing alone, does not violate the Eighth Amendment. Rather, Plaintiffs bear the burden of showing that crowded conditions led to independent deprivations of essential food, medical care, sanitation, or other

necessities. 452 U.S. at 348. Plaintiffs' bare claims that they are double-bunked in cells that were originally designed for one person fails to demonstrate that their confinement violates either the Eighth or the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 541-43 (1979) (upholding double bunking of pretrial detainees in cells originally designed for one person).

2. failure to protect from dangerous inmates

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiffs must show that Defendants were deliberately indifferent to the Plaintiffs' risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cty. of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.") Here, Plaintiffs allege actual attacks by dangerous convicted felons. They further allege that they are exposed to these dangerous inmates because Defendants Ingham County and Sheriff Wriggelsworth follow a policy or custom of putting all prisoners together without segregating the dangerous prisoners. Upon initial review, Plaintiffs' allegations are sufficient to state a claim.

3.    exercise

The Eighth Amendment entitles prisoners to exercise sufficient to maintain reasonably good physical and mental health. *See Walker v. Mintzes*, 771 F.2d 920-27 (6th Cir. 1985). Plaintiffs allege that they are not provided any opportunity for out-of-cell exercise. Upon initial review, Plaintiffs' allegations are sufficient to state a claim.

4.    black mold

Plaintiffs contend that the jail closed several posts because of the presence of black mold. Exposure to black mold may, in an appropriate case, be sufficiently serious as to satisfy the objective component of the Eighth Amendment. *Compare Board v. Farnham*, 394 F.3d 469, 486-87 (7th Cir. 2005) (mold in the ventilation system violates Eighth Amendment), *with Causey v. Allison*, No. 1:08CV155-RHW, 2008 WL 4191746, at *1 (S.D. Miss. Sept. 9, 2008) (no Eighth Amendment violation where prisoner claimed black mold was growing in the shower but "admits that he has had no medical problems resulting from the black mold"); *see also McIntyre v. Phillips*, No. 1:07-cv-527, 2007 WL 2986470, at *2-*4 (W.D. Mich. Sept. 10, 2007) (dismissing prisoner action and holding that some exposure to black mold is a risk society has chosen to tolerate) (citing *Brady v. State Farm Fire & Cas. Co.*, No. 05-30716, 2006 WL 551388, at *3 (5th Cir. Mar. 8, 2006) (dismissing action because Plaintiff did not use due diligence in determining whether mold was airborne or simply present in her house)).

Here, Plaintiffs allege the mold has become airborne and travels through the ventilation system. They further allege that the presence of mold has caused them health problems. As a consequence, Plaintiffs' allegations about the presence of mold demonstrate the existence of a sufficiently serious risk to prisoner health to implicate the Eighth Amendment. *Ivey*, 832 F.2d at 954. Upon initial review, Plaintiffs' allegations are sufficient to state a claim.

### 5. unsafe drinking water

Plaintiffs allege that there are signs up all over the jail telling the inmates to not drink the water. (Am. Compl. ¶ 5.) The signs instruct that one should let the sink run for 30 seconds first if the inmate decides to drink the water anyway. (*Id*.) Plaintiffs claim that is not an option for the inmates because the sinks are on timers that limit the flow of water to five seconds. (*Id*.) They allege that the deputies bring their own water from home, rather than drinking jail water. (*Id*.) Plaintiffs claim that inmates have no choice but to drink the jail water that has been labeled as unsafe. Upon initial review, Plaintiffs' allegations are sufficient to state a claim. *Dellis v. Corr. Corp of Am.*, 257 F.3d 508, 512 (6th Cir. 2001) ("Plaintiff's deprivation of drinking water allegation states a viable Eighth Amendment claim.").

### 6. toilets

Plaintiffs next claim that their cell toilets will only flush twice in one hour. They contend that, if one of the two cell occupants has to use the toilet another time within the hour, both inmates are forced to smell the odors. They also suggest that if the occupant must use the toilet for a fourth time during the hour, the fourth user may be exposed to unsanitary toilet-bowl splash.

Plaintiffs' allegations suggest minor and temporary unpleasantness. Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell,

or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis*, 257 F.3d at 511; *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

With respect to Plaintiffs' claims that their cell toilet will not flush more than twice per hour, Plaintiffs fail to state a claim of constitutional magnitude. Plaintiffs do not allege that they (or their cellmates) suffer from a chronic need to use the restroom more than once per hour. As a result, the likelihood is small that the inmates would have to use the toilet a third time within the hour, and if they did, the only hardship they would suffer is an objectionable odor for a few minutes. It is even less likely that one of the inmates would use the restroom a fourth time and experience toilet-bowl splash.

A prisoner's exposure to the smell of feces is not sufficient to state an Eighth Amendment claim. *See Abdur-Reheem-X v. McGinnis*, No. 99-1075, 1999 WL 1045069, at *3 (6th Cir. Nov. 12, 1999) (sickening smell of feces does not constitute a sufficiently serious health threat under the Eighth Amendment); *Bey v. Luoma*, No. 2:06-cv-243, 2009 WL 884630, at *2 (W.D. Mich. Mar. 30, 2009) (exposure to smell of feces does not violate the Eighth Amendment, despite claims of resulting nausea, lack of appetite, and headaches); *Dickinson v. Taylor*, No. Civ.A. 98-695-GMS, 2000 WL 1728363, at *3 (D. Del. May 19, 2000) (holding that a prisoner's "claim that he was

forced to endure the smell of his neighbor's feces was properly dismissed because other than nausea, the plaintiff had asserted no serious health threat arising from the unpleasant odors") (internal quotations omitted)).

Moreover, the Sixth Circuit has recognized on more than one occasion that the Eighth Amendment does not require prisoners to have immediate access to a flushable toilet. *See Abdur-Reheem-X*, 1999 WL 1045069, at *2 (holding that the "Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets") (citing *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992) ("We do not agree that it violates the Eighth Amendment to require prisoners to use nonflushable toilets on occasion.")). Other courts have agreed. In *Grimes v. Thomas*, No. 2:12-cv-01909-LSC, 2014 WL 554700, at *7 (N.D. Ala. Feb. 12, 2014), the plaintiff complained about a toilet system similar to that in issue in the instant case. In *Grimes*, the toilet system locked out for a one-hour period, after it had been flushed twice within five minutes. The *Grimes* court, relying on *Abdur-Reheem-X*, 1999 WL 1045069, at *2, held that the Eighth Amendment was not violated when a prisoner had to wait an hour to flush his toilet. *Grimes*, 2014 WL 554700, at *7. *See also Wiley v. Ky. Dep't of Corr.*, No. 11-97-HRW, 2012 WL 5878678, at *4 (E.D. Ky. Nov. 21, 2012) ("Temporary placement in a cell with no flushable toilet is not an extreme deprivation of a basic necessity.").

In sum, Plaintiffs' allegations concerning the toilet system at ICJ concern only minimal and incidental harms that do not offend the Eighth Amendment. *Dellis*, 257 F.3d at 511. They do not constitute the sort of "extreme deprivations" that make out a conditions-of confinement claim. *Hudson*, 503 U.S. at 9.

7.      showers

Plaintiffs complain that the shower is set to automatically turn on for only three minutes.  They contend that three minutes is insufficient time to clean themselves after exposure to someone else's urine or fecal matter by toilet bowl splash.

A three-minute shower, while brief, does not amount to a deprivation of basic sanitation within the meaning of the Eighth Amendment.  Although Plaintiffs may wish for more time in the shower, knowing the limitations on their shower time, they should be able to rinse, lather, and rinse again their entire bodies within three minutes.  No reasonable factfinder could conclude that a short shower results in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

C.      First Amendment–Access to the courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The Court held: "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25.  The right of access to the courts also prohibits prison officials from erecting barriers

that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

Plaintiffs allege that Defendants have, as a matter of custom and policy, denied them an adequate law library or alternative and, therefore, meaningful access to the Courts. Plaintiffs further contend that Defendants have denied Plaintiffs possession of legal discovery materials. Construed liberally, such a denial operates as a barrier that may impede Plaintiffs' access to the courts. Upon initial review, Plaintiffs' allegations are sufficient to state a claim.

### D.     First Amendment–incoming mail

Plaintiffs complain that their incoming personal mail is limited to postcards only. The First Amendment applies to a prisoner's receipt of incoming mail, the right is subject to limitation by legitimate penological interests. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). The ICJ may certainly have a legitimate penological interest to support the "postcard only" rule; but, upon initial review, Plaintiffs' allegations are sufficient to state a claim.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiffs' amended complaint claims against Defendants Soltis and Perry will be dismissed for misjoinder. Plaintiffs' Eighth or Fourteenth Amendment claims concerning double-bunking, toilets, and showers will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Ingham County and Sheriff Wriggelsworth on: (1) Plaintiffs' Eighth Amendment and/or Fourteenth Amendment claims involving deprivation of out-of-cell exercise, failure to protect from

dangerous prisoners, black mold, and unsafe drinking water; (2) Plaintiffs' First Amendment access to the courts claims; and (3) Plaintiffs' First Amendment incoming mail claim.

An Order consistent with this Opinion will be entered.


Dated:  November 14, 2017          /s/ Janet T. Neff
                                  Janet T. Neff
                                  United States District Judge